UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

---

| | |
|---|---|
| Tiffany E.,[1] | Case No. 22-cv-1011 (DJF) |
| Plaintiff, | |
| v. | **ORDER** |
| Kilolo Kijakazi, | |
| Defendant. | |

---

Pursuant to 42 U.S.C. § 405(g), Plaintiff Tiffany E. ("Plaintiff") seeks judicial review of a final decision ("Decision") by the Commissioner of Social Security ("Commissioner") that denied her application for disability insurance benefits ("DIB"). This matter is presented for decision by the parties' cross motions for summary judgment.[2] Finding substantial evidence in the record to support the Commissioner's decision, the Court denies the Plaintiff's motion for summary judgment (ECF No. 17), grants the Commissioner's motion for summary judgment (ECF No. 20), and affirms the Commissioner's decision.

## BACKGROUND

Plaintiff applied for DIB and Supplemental Security Income ("SSI")[3] under Titles II and XVI of the Social Security Act ("Act") on October 11, 2018 (Soc. Sec. Admin. R. (hereinafter

---

[1] This District has adopted a policy of using only the first name and last initial of any nongovernmental parties in orders in Social Security matters.

[2] The parties consented to have the undersigned United States Magistrate Judge conduct all proceedings in this case, including the entry of final judgment.

[3] Plaintiff is not pursuing her SSI claim before this Court. (*See* ECF No. 18 at 1.)

1

"R.") 10, 277–92).[4] At that time she was a 25-year-old woman, with prior work experience in a variety of retail, restaurant, cleaning and other unskilled positions. (*See* R. 57, 375.) She originally alleged her disability began on April 14, 2000, but amended her disability onset date to October 11, 2017 at the administrative hearing. (*See* R. 10.) She based her initial claim on disability due to depression, post-traumatic stress disorder ("PTSD"), borderline personality disorder ("BPD"), fibromyalgia, back pain, sleep apnea, and exterior otis ears. (R. 68, 77.)

An individual is considered disabled for purposes of DIB if she is "unable to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. § 1382c(a)(3)(A). In addition, an individual is disabled "only if [her] physical or mental impairment or impairments are of such severity that [s]he is not only unable to do [her] previous work but cannot, considering [her] age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy." 42 U.S.C. § 1382c(a)(3)(B). "[A] physical or mental impairment is an impairment that results from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques." 42 U.S.C. § 1382c(a)(3)(D).

The Commissioner has established a sequential, five-step evaluation process to determine whether an individual is disabled. 20 C.F.R. § 416.920(a)(4). At step one, the claimant must establish that she is not engaged in any "substantial gainful activity." 20 C.F.R. § 416.920(a)(4)(i). The claimant must then establish that she has a severe, medically determinable impairment or

---

[4] The Social Security administrative record (R.) is filed at ECF No. 11. For convenience and ease of use, the Court cites to the record's pagination rather than the Court's ECF and page numbers.

2

combination of impairments at step two. 20 C.F.R. § 416.920(a)(4)(ii). At step three, the Commissioner must find that the claimant is disabled if the claimant has satisfied the first two steps and the claimant's impairment meets or is medically equal to one of the impairments listed in 20 C.F.R. Part 404, Subpart P, App'x 1 ("Listing of Impairments" or "Listing"). C.F.R. § 416.920(a)(4)(iii).[5] If the claimant's impairment does not meet or is not medically equal to one of the impairments in the Listing, the evaluation proceeds to step four. The claimant then bears the burden of establishing her residual functional capacity ("RFC") and proving that she cannot perform any past relevant work. C.F.R. § 416.920(a)(4)(iv); *Baldwin v. Barnhart*, 349 F.3d 549, 556 (8th Cir. 2003); *Young v. Apfel*, 221 F.3d 1065, 1069 n.5 (8th Cir. 2000). If the claimant proves she is unable to perform any past relevant work, the burden shifts to the Commissioner to establish at step five that the claimant can perform other work existing in a significant number of jobs in the national economy. *Bowen v. Yuckert*, 482 U.S. 137, 146 n.5 (1987). If the claimant can perform such work, the Commissioner will find that the claimant is not disabled. 20 C.F.R. § 416.920(a)(4)(v).

The Commissioner denied Plaintiff's application for DIB initially (R. 215–19) and on reconsideration (R. 144–48, 162–67). On June 1, 2021, at Plaintiff's request (R. 170), an Administrative Law Judge ("ALJ") held a hearing on Plaintiff's claim. (*See* R. 10.) An attorney represented Plaintiff at the hearing, and a vocational expert testified. (R. at 32–61.)

After the hearing, the ALJ issued a decision finding Plaintiff had not engaged in substantial gainful activity since her amended disability onset date. (R. 12–13.) The ALJ further determined Plaintiff had multiple severe impairments: obesity; chondromalacia of the patella bilaterally;

---

[5] The Listing of Impairments is a catalog of presumptively disabling impairments categorized by the relevant "body system" impacted. See 20 C.F.R Part 404, Subpart P, App. 1.

major depressive disorder; bipolar disorder; generalized anxiety disorder; BPD; and PTSD. (R. 13.) The ALJ found, however, that Plaintiff's impairments did not meet or medically equal any impairment in the Listing. (R. 14–15.) The ALJ then determined that Plaintiff has the RFC:

> to perform medium work as defined in 20 CFR 404.1567(c) and 416.967(c) except the claimant is able to lift and/or carry up to 25 pounds frequently and 50 pounds occasionally; is able to understand, remember, and carry out short, simple instructions; is able to interact appropriately with coworkers and the general public on an occasional basis; is able to maintain attention and concentration for routine work for two hour segments; is able to respond appropriately to work pressures in a usual work setting; and is able to respond appropriately to changes in a routine work setting.

(R. 15–16.)

In addressing Plaintiff's mental health issues, the ALJ stated, based on the "substantial overlap of symptomology between different mental health impairments, as well as the inherently subjective nature of mental health diagnoses[,]" that she would consider Plaintiff's "psychological symptoms and their effect on functioning … together, instead of separately, regardless of the diagnostic label attached." (R. 17.)

In reviewing Plaintiff's treatment history, the ALJ repeatedly highlighted Plaintiff's pattern of prescription and counseling treatment noncompliance and how treatment generally improved her symptoms. (R. 18.) And in finding Plaintiff's mental health symptoms were not as intense, persistent and limiting as Plaintiff argued the record established, the ALJ relied, in part, on Plaintiff's treatment noncompliance and her history of successful treatment. (R. 18.) The ALJ noted that Plaintiff's mental health treatment was generally conservative, and that Plaintiff does not have a history of emergency mental health treatment, hospitalization, or participation in day treatment programs.[6] (R. 19.) The ALJ highlighted treatment notes indicating that during

---

[6] Plaintiff's mental health treatment record reflects she was hospitalized twice as a child, at the ages of 13 and 14, for "cutting, stealing and cannabis use." (R. 453.) These admissions took

4

Plaintiff's visits with medical providers she was fully oriented, displayed cooperative behavior, exhibited logical thought processes, and retained an intact memory and concentration, as well as intact insight and judgment. (R. 19.)  The ALJ also relied on notes from Plaintiff's Adult Rehabilitative Mental Health Services ("ARMHS") assessments, which highlighted Plaintiff's ability to shop for herself, go out to eat and take her children to the park as demonstrating her symptoms lacked the severity and intensity she alleged. Additionally, the ALJ noted that Plaintiff had quit a previous job for nondisability reasons, including lack of transportation and a custody battle resulting in multiple absences. (R. 19.)

The ALJ also found persuasive the opinions of state agency psychiatric consultants Mary Sullivan, Ph.D., and David Biscardi, Ph.D.  (R. 19–20.) Dr. Sullivan determined that Plaintiff can: carry out and sustain the performance of one- to three-step tasks; complete a normal workday; interact briefly and superficially with coworkers and supervisors; and adapt to changes and stressors in the workplace.  The ALJ found Dr. Sullivan's opinion was supported by the available evidence. (R. 19.)  Dr. Biscardi determined that Plaintiff can:  understand, remember, carry out and sustain performance of one- to two-step tasks; complete a normal workday; interact briefly and superficially with coworkers and supervisors; and adapt to changers and stressors associated with simple competitive work activities. (R. 20.)  The ALJ noted that additional information was submitted into the record by the time of the hearing, which neither Dr. Sullivan nor Dr. Biscardi had an opportunity to review.  (R. 19-20.)  Based on the complete evidentiary record, the ALJ determined that additional limitations to Plaintiff's RFC were appropriate.[7]  (*Id*.)

---

place more than six years before the beginning of the disability period and Plaintiff does not cite to them as a basis for establishing her current disability status.

[7] For example, the ALJ found Plaintiff was able to maintain attention and concentration for routine work only for "two hour segments."  (R. 15-16.)

The ALJ found the opinion of consultative psychiatric examiner Scott Ressler, Psy.D, was "not entirely persuasive", however. (R. 20.) In April 2019, Dr. Ressler determined that Plaintiff can understand simple and repetitive instructions; would have difficulty remembering basic instructions over time; appeared incapable of performing simple tasks with adequate pace and persistence; appeared to have severely impaired social skills; would likely experience significant difficulties interacting with coworkers and supervisors; and was impaired in her ability to handle stress and pressure. (R. 20.) The ALJ found this opinion was inconsistent with the record evidence, noted that it was based on Dr. Ressler's one-time assessment, and described Dr. Ressler's proposed restrictions as vague. (R. 20.) The ALJ concluded Dr. Ressler's determinations about Plaintiff's ability to work and interact with others were not fully supported by his examination's findings, which showed that, although Plaintiff's memory was impaired and she had only fair insight, she had good eye contact, attentive and cooperative behavior, and goal directed thought processes. (R. 20.) The ALJ further found Plaintiff's course of mental health treatment would have been more aggressive if her limitations were as significant as Dr. Ressler suggested. (R. 20.)

The ALJ rejected the opinion of Michael McGregor, P.A. as unpersuasive. (R. 20.) Mr. McGregor found Plaintiff had "no restrictions on sedentary or activities of daily living." The ALJ noted that his assessment was based on a treating relationship, but rejected it on the ground that it did not include a function-by-function analysis of Plaintiff's ability to perform basic work activities. (*Id*.)

When considering Plaintiff's subjective allegations of physical pain and fatigue, the ALJ rejected Plaintiff's claims with respect to their intensity and severity based on the following analysis:

> The objective medical evidence does not support the severity of pain or the limitations alleged (e.g., 10F/27-29; 12F/7-8). The claimant's treatment for

6

> physical impairments has been essentially routine and/or conservative in nature. She was not evaluated for knee surgery. She did not consistently participate in physical therapy (e.g., 12F/11). She was not referred to pain management. While the claimant's physical impairments cause symptoms and limitations, the record does not establish that the impairments would preclude medium work. The claimant exhibited intact muscle strength (5F/10; 10F/7; 12F/8; 17F/29). She exhibited intact range of motion (5F/10; 10F/7, 9; 12F/8; 17F/57). She displayed intact reflexes (5F/10; 10F/7; 12F/8).

(R. 18.)

In addressing step 5, the ALJ asked the vocational expert whether jobs exist in substantial numbers in the national economy for a hypothetical person of Plaintiff's age, education, work experience and RFC. (R. 21, 57-58.) Based on the vocational expert's testimony, the ALJ concluded that, while Plaintiff could not perform any past relevant work, she could perform multiple positions existing in substantial numbers in the national economy, including hand packager, electronic worker, and folder. (R. 21-22.) Finding Plaintiff capable of making a successful adjustment to such other work, the ALJ concluded Plaintiff is not disabled. (R. 22.) The Appeals Council denied Plaintiff's request for review of the ALJ's decision (R. 1-4), and this lawsuit followed.

## DISCUSSION

The Court's review of the Commissioner's Decision is limited to determining whether the Decision is "supported by substantial evidence on the record as a whole." *McKinney v. Apfel*, 228 F.3d 860, 863 (8th Cir. 2000). "Substantial evidence … is more than a mere scintilla." *Biestek v. Berryhill*, 1439 S. Ct. 1148, 1154 (2019) (quotation omitted). It is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id.* (quoting *Consol. Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)). This "threshold … is not high." *Id.* "If, after reviewing the record, the court finds it is possible to draw two inconsistent positions from the evidence and

7

one of those positions represents the [ALJ's] findings, the court must affirm the [ALJ's] decision." *Perks v. Astrue*, 687 F.3d 1086, 1091 (8th Cir. 2012) (quotation omitted).

Plaintiff raises three challenges to the ALJ's determination. First, Plaintiff argues the ALJ's findings on Plaintiff's mental functional capacity are not based on substantial evidence because she failed to fully consider Plaintiff's mental health history—and specifically, whether Plaintiff's treatment noncompliance was a symptom of Plaintiff's mental health conditions. Second, she argues the ALJ improperly found the state agency psychologists' opinions persuasive over the opinion of Dr. Ressler, an examining consultant with psychiatrist specialization. And third, she argues the ALJ violated SSR 16-3p by failing to apply the *Polaski* factors in assessing Plaintiff's credibility regarding her allegations of pain and fatigue. *See Polaski v. Heckler*, 739 F.2d 1320 (8th Cir. 1984). For the reasons given below, the Court finds that, although the ALJ's decision is not a model of clarity, it is supported by substantial evidence and should be affirmed on that basis.

I. **Mental Health Evidence and Treatment Noncompliance**

Plaintiff argues that in assessing her residual functional capacity, the ALJ failed to take into account the possibility that her mental health condition might fluctuate with good and bad days, such that she could appear normal on some days and not on others. (ECF No. 18 at 5-6.) But Plaintiff bears the ultimate burden of proving her residual functional capacity, *see Baldwin*, 349 F.3d at 556, and in asserting this argument, Plaintiff does not point to evidence in the record supporting an inference that whatever "bad days" she might have had were so limiting as to prevent her from working. Even if she had, the Court is mindful that the issue is not "whether substantial evidence exists to reverse the ALJ," but instead, "whether substantial evidence supports the ALJ's decision." *Vossen v. Astrue*, 612 F.3d 1011, 1015 (8th Cir. 2010) (citing *Young*, 221 F.3d at 1068). The Court finds no error in the ALJ's reliance on the supporting opinions of Drs. Sullivan and

Biscardi, which in turn relied Plaintiff's medical records to determine she was capable of work with limitations.

Citing *Pate-Fires v. Astrue*, 564 F.3d 935 (8th Cir. 2009), Plaintiff further argues the ALJ improperly relied on her treatment noncompliance as a basis for rejecting her claim, without due consideration of the potential impact her mental health conditions may have had in causing such noncompliance. In *Pate-Fires*, the Eighth Circuit highlighted that "federal courts have recognized a mentally ill person's noncompliance with psychiatric medications can be, and usually is, the 'result of [the] mental impairment [itself], and therefore, neither willful nor without a justifiable excuse.'" 564 F.3d 935, 945 (8th Cir. 2009) (alterations in original) (emphasis added) (citing *Mendez v. Chater*, 943 F. Supp. 503, 508 (E.D. Pa. 1996) (citing *Sharp v. Bowen*, 705 F. Supp. 1111, 1124 (W.D. Pa. 1989)).

*Pate-Fires* is distinguishable from this case in material respects, however. The medical record in that case included multiple entries noting not only that the plaintiff had poor medication compliance, but that this noncompliance was attributable to her mental illness. *Pate-Fires*, 564 F.3d at 946. In addition, the plaintiff in *Pate-Fires* had a documented history of markedly more severe mental health concerns, including "delusional and bizarre behavior," psychotic episodes, "homicidal ideations," and multiple involuntary inpatient hospital admissions. *Id.* at 936-40.[8] In the time since that decision, other courts in this district have similarly distinguished *Pate-Fires* on these grounds, noting that it is ultimately the plaintiff's burden to "demonstrate that noncompliance was a medically determinable symptom that is a manifestation of the impairment." *Mai V. v. Saul*,

---

[8] Plaintiff points to the fact that she qualified for mental health and case management services from the State of Minnesota to demonstrate the severity of her mental health conditions, (ECF No. 18 at 7-8), but a generalized need for mental health services is not alone sufficient to establish disability. Plaintiff had the burden of showing that—despite the services she is using—she is incapable of working with restrictions.

9

No. 18-cv-2994 (KMM), 2019 WL 6169999, at *4 (D. Minn. Nov. 20, 2019); *see also Kriss S. v. Berryhill*, 18-cv-3839 (DWF/HB), 2019 WL 542942, at *8–*9 (D. Minn. Jan. 16, 2019), *report and recommendation adopted*, 2019 WL 538340 (D. Minn. Feb. 11, 2019) (distinguishing that case from *Pate-Fires* because in the latter "there was objective evidence of claimant's mental impairments and their effect … on her ability to comply consistently with prescribed medications").

In this matter, the ALJ did not expressly consider whether Plaintiff's treatment noncompliance was a symptom of her mental health disorders, but Plaintiff has not pointed to evidence in the record establishing that her mental health impairments are the cause of her mental health disorders. *See Kriss. S.*, 2019 WL 542942, at *9 ("[T]he suggestion that Plaintiff's failure to follow her doctors' recommendations as to medication, therapy, and lifestyle changes was a medically determinable symptom of her mental illness is found only in counsel's argument, not in the medical records.") And treatment noncompliance was only one the factors the ALJ cited in reaching her conclusion. (*See* R. 19, noting there was no evidence of emergency treatment, psychiatric hospitalization or participation in mental health day treatment programs, that Plaintiff displayed cooperative behavior, logical though processes, intact memory and concentration, and that she had generally intact insight and judgment.) The ALJ's decision was also supported by the opinions of Drs. Sullivan and Biscardi, whom she found persuasive except for the addition of restrictions based on a more developed record at the hearing level. (R. 19–20.) As Plaintiff fails to establish that "the record … support[s] a finding that noncompliance was a medically determinable symptom of" her mental impairments, and such noncompliance was not crux of the ALJ's decision in any event, the Court rejects this argument as basis for reversal or remand. *See Mai V.*, 2019 WL 6169999, at *4.

II.     **Examining Physician's Opinion**

Plaintiff also argues the ALJ should have given greater weight to the opinion of Dr. Ressler, who conducted a one-time, consultative examination of Plaintiff. Following changes to the applicable regulations, an ALJ is no longer required to defer to a treating or examining medical provider so long as they apply certain factors in determining the persuasiveness of the provider's opinion. *See* 20 C.F.R. § 404.1520c(a). These factors are:

>   (1) Supportability
>   (2) Consistency
>   (3) Relationship with the claimant (which includes)
>       (i) Length of the treatment relationship
>       (ii) Frequency of examinations
>       (iii) Purpose of the treatment relationship
>       (iv) Extent of the treatment relationship
>       (v) Examining relationship
>   (4) Specialization
>   (5) Other factors (a catch all)

*Id.* at §§ 404.1520c(a)-(c), 416.920c(a)-(c). The two most important factors for the ALJ to consider are supportability and consistency. *Id.* at § 404.1520c(b)(2).

Dr. Ressler's opinion included findings—not adopted in the ALJ's residual functional capacity determination—that Plaintiff was "incapable of performing simple tasks with adequate pace and persistence" and "would likely experience significant difficulties interacting with coworkers and supervisors." (R. 20.) In finding Dr. Ressler's opinion "not entirely persuasive" (R. 20), the ALJ noted that: Dr. Ressler was a consultative psychiatric examiner who examined Plaintiff once, *see Marie v. Kijakazi*, 20-cv-2295 (LIB), 2022 WL 1715192, at *8 (D. Minn. Mar. 31, 2022) (finding decision to reject physician's opinion was supported by substantial evidence, in part, because the physician only examined the plaintiff once); his notes regarding Plaintiff's mental health status during the appointment contradicted his recommendations, *see Kraus v. Saul*, 988 F.3d 1019, 1023 (8th Cir. 2021) (finding the ALJ properly discredited the treating physician's

11

opinion based, in part, on the treatment notes not supporting his conclusions); Dr. Ressler's opinion was not consistent with other doctor's medical observations, *see id.*, or Plaintiff's conservative treatment history, *see Pierce v. Kijakazi*, 22 F.4th 769, 773 (8th Cir. 2022) (noting, while affirming the ALJ's decision to discredit a treating physician's opinion, that "[p]erhaps the most persuasive medical reason the ALJ offered in support of his finding as to Pierce's RFC is the relatively conservative course of treatment that Pierce undertook to deal with the pain.").

In conducting her analysis of Dr. Ressler's opinion, the ALJ plainly considered each of the factors set forth in the regulations:  its inconsistency with the medical record and Plaintiff's conservative treatment history; its incomplete support from Dr. Ressler's examination findings; Dr. Ressler's relationship with Plaintiff—involving a single examination; and Dr. Ressler's area of specialty.  Given that the ALJ took into account all of these factors in evaluating Dr. Ressler's opinion, as well as the opinions of two other medical opinions that were at odds with Dr. Ressler's, the Court cannot find legal error in the ALJ's assessment of Dr. Ressler's opinion.  While another decision-maker might have weighed the factors differently, Plaintiff's disagreement with weight the ALJ afforded them is not a basis for reversal.

### III.   *Polaski* Factors

Plaintiff also challenges the ALJ's decision on grounds that the ALJ failed to apply the factors established in *Polaski v. Heckler* in evaluating Plaintiff's complaints of pain and fatigue.  Under *Polaski*, when assessing a claimant's subjective allegations, such as allegations of pain or fatigue, "an ALJ must examine: (1) the claimant's daily activities; (2) the duration, frequency, and intensity of the condition; (3) dosage, effectiveness, and side effects of medication; (4) precipitating and aggravating factors; and (5) functional restrictions." *Burnside v. Apfel*, 22 F.3d 840, 844 (8th Cir. 2000) (citing *Polaski*, 739 F.2d at 1322).  "Other relevant factors include the

claimant's relevant work history and the absence of objective medical evidence to support the complaints." *Black v. Apfel*, 143 F.3d 383, 386 (8th Cir.1998).  Though the ALJ must consider these factors, the "ALJ is not required to explicitly discuss each factor individually or in depth." *Nicole W. v. Kijakazi*, 20-cv-2697 (SRN/BRT), 2022 WL 3047088, at *5 (D. Minn. July 14, 2022) (citing *Hanson v. Colvin*, 20-cv-961 (TNL), 2013 WL 4811067, at *16 (D. Minn. Sept. 9, 2013)), *report and recommendation adopted*, 2022 WL 3045130 (D. Minn. Aug. 2, 2022).  However, there must be some indication in the opinion that the ALJ considered similar or most of the *Polaski* factors for a court to hold that the deficiency in opinion writing is not material. *See, e.g.*, *Alia D. v. Kijakazi*, 21-cv-366 (MJD/LIB), 2022 WL 3718600, at *16 (D. Minn. July 27, 2022) (rejecting remand where ALJ did not specifically identify the *Polaski* factors by name, but it was evident from the record that the ALJ considered several *Polaski* factors), *report and recommendation adopted*, No. 21-CV-366 (MJD/LIB), 2022 WL 3717186 (D. Minn. Aug. 29, 2022).  The "ALJ cannot only rely on the lack of objective medical evidence in making his or her conclusion." *Ramirez v. Barnhart*, 292 F.3d 576, 581 (8th Cir. 2002).

In this case, throughout the course of her analysis addressing Plaintiff's allegations of impairments, the ALJ considered:  Plaintiff's daily activities, including her work history (R. 13 and 19, noting that Plaintiff worked part-time after her alleged disability onset date and quit for reasons unrelated to disability) and other activities of daily life (R. 18, noting that Plaintiff reported shopping, going to the library, going to restaurants and to the park with her children, and taking the bus); her medical diagnoses (R. 13-14); the severity of her condition (R. 13, describing Plaintiff's musculoskeletal impairments as "non-severe" and "adequately controlled with treatment," and noting her fibromyalgia claim had not been documented with the requisite number of tender points; R. 17, describing Plaintiff's complaints of knee, shoulder, hand and spine pain,

but noting she exhibited intact muscle strength and full range of motion); treatment effectiveness (R. 17-18, noting she failed to follow through with most physical therapy recommendations, she was not referred for pain management, and treatments for her physical impairments were conservative); and functional restrictions (R. 15-18, considering and adopting functional restrictions). Because the ALJ addressed these *Polaski* factors and other related factors in her analysis, the Court does not believe there is a material deficiency in her opinion writing. *Nicole W.*, 2022 WL 3047088, at *5. The Court further finds substantial evidence in the record supports the ALJ's RFC determination with respect to Plaintiff's allegations of physical pain. *See, e.g., Pierce*, 22 F.4th 769, 773 (8th Cir. 2022) (finding substantial evidence supported the ALJ's decision based on conservative course of treatment and plaintiff's employment record).

## ORDER

Based on the foregoing, and on all of the files, records, and proceedings herein, **IT IS HEREBY ORDERED THAT**:

1. Plaintiff's Motion for Summary Judgment (ECF No. [17]) is **DENIED**;

2. The Commissioner's Motion for Summary Judgment (ECF No. [20] is **GRANTED**;

3. The Commissioner's Decision is **AFFIRMED**; and

4. Plaintiff's Complaint (ECF No. [1]) is **DISMISSED WITH PREJUDICE**

**LET JUDGMENT BE ENTERED ACCORDINGLY.**

Dated: September 8, 2023                  *s/ Dulce J. Foster*
                                          Dulce J. Foster
                                          United States Magistrate Judge